**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 21-cv-01963-NYW

M.D.,

      Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[1]

      Defendant.

---

### MEMORANDUM OPINION AND ORDER

---

      This civil action arises under Title II, 42 U.S.C. § 401 *et seq.*, and Title XVI, 42 U.S.C. § 1381 *et seq.*, of the Social Security Act (the "Act") for review of the final decision of the Commissioner of Social Security Administration (the "Commissioner" or "Defendant") denying the application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") filed by M.D. ("Plaintiff" or "M.D.").[2]  After carefully considering the Parties' arguments,

---

[1] On July 9, 2021, President Biden appointed Kilolo Kijakazi as Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Kijakazi should be substituted for Andrew M. Saul, former Commissioner of Social Security, as the defendant in this suit.  No further action need be taken to continue this suit pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiffs by initials only."  D.C.COLO.LAPR 5.2(b).  Accordingly, this court refers to Plaintiff using his initials only.

the Administrative Record, and the applicable case law, the Commissioner's decision is respectfully **REVERSED** and **REMANDED**.[3]

## BACKGROUND

Plaintiff alleges that he became disabled on September 30, 2017 due to the following conditions: compartment syndrome in his lower left leg; a sublexed left arm with hematoma; a brachial plexus injury; herniated discs; bipolar disorder; attention-deficit/hyperactivity disorder ("ADHD"); and neuropathy.  [Doc. 10-5 at 261; Doc. 10-6 at 294].[4]  Given his various ailments, Plaintiff filed applications for DIB and SSI in January 2019.  [Doc. 10-5 at 258, 265].  The Social Security Administration denied Plaintiff's application on May 3, 2019, [Doc. 10-4 at 139], and denied his request for reconsideration on November 14, 2019.  [*Id.* at 168].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), *see* [*id.* at 198], which was held before ALJ Rebecca LaRiccia on November 19, 2020.  [Doc. 10-2 at 31].

Following the hearing, the ALJ issued a decision on January 13, 2021, finding that Plaintiff met the insured status requirements of the Act through December 31, 2022 and that he had not engaged in substantial gainful activity as of his alleged disability onset date of September 30, 2017.  [*Id.* at 14].  The ALJ determined that Plaintiff has the following severe impairments:

> obesity; sleep apnea; rhabdomyolysis; traumatic compartment syndrome of the left lower extremity post fasciotomy, now with complex regional pain syndrome in the left lower extremity; small fiber neuropathy; degenerative disc disease of the lumbar spine; bipolar disorder; and attention deficit/hyperactivity disorder.

---

[3] Originally, this court fully presided over this matter pursuant to 28 U.S.C. § 636(c) and the Order Directing Reassignment dated January 27, 2022.  [Doc. 18].  On July 22, 2022, Judge Wang was confirmed as a United States District Judge and now presides over this case in this capacity.  *See* [Doc. 20].

[4] When citing to the Administrative Record, the court utilizes the docket number assigned by the Electronic Court Filing ("ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page.  For all other documents, the court cites to the document and page number generated by the ECF system.

[*Id.* at 15].  The ALJ concluded that these medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities.  [*Id.*].  However, the ALJ determined that Plaintiff was not disabled upon finding that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R § 404.1657(b),[5] with the following limitations:

> The claimant can stand and/or walk 2 hour in an 8-hour workday.  He can occasionally climb ramps and stairs.  He can frequently stoop, kneel, crouch, and crawl.  He must avoid climbing ladders, ropes, and scaffolds.  He must avoid unprotected heights and dangerous moving machinery.  He must be allowed use of cane for prolonged ambulation of more than 100 feet.  He can understand, remember, and carry out no more than simple instructions that can be learned in 30 days or less and can sustain concentration, persistence, and pace for those simple instructions for 2-hour intervals with normal breaks.  He can adapt to simple workplace changes.

[*Id.* at 18].

Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on May 28, 2021, rendering the ALJ's decision the final decision of the Commissioner.  [*Id.* at 1].  Plaintiff then sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on July 20, 2021.  [Doc. 1].  This matter is now ripe for consideration, and I consider the Parties' arguments below.

## LEGAL STANDARD

An individual is eligible for DIB benefits under the Act if he or she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act.  42 U.S.C. § 423(a)(1).  In addition, SSI is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act.  42 U.S.C. § 1382.  An

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

individual is determined to be under a disability only if his or her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 13382c(a)(3)(B).  The disabling impairment must last, or be expected to last, for at least 12 consecutive months.  *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.905.  When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step sequential evaluation process for determining whether a claimant is disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the RFC to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail).  "The claimant bears the burden of proof through step four of the analysis," while the Commissioner bears the burden of proof at step five.  *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is

not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. SSR 83-10, 1983 WL 31251, at *7 (SSA 1983). "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 (SSA 1996) ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")). The ALJ need not identify "specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not

substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). In making this determination, the court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

M.D. identifies several issues in the ALJ's decision denying benefits that he contends warrant reversal here. First, he argues that the ALJ failed to properly evaluate all of his medically determinable impairments—in particular, his obesity, sleep apnea, and mental limitations. [Doc. 12 at 12-17]. Then, he asserts that the ALJ failed to properly consider his subjective testimony concerning his symptoms, [*id.* at 17-18], and failed to address or reconcile conflicts in the evidence. [*Id.* at 18-21]. Finally, Plaintiff asserts that the ALJ's conclusion that jobs which Plaintiff can perform exist in significant numbers in the national economy is not supported by substantial evidence. [*Id.* at 21-22]. The court addresses these arguments below.

## I.     Consideration of Plaintiff's Impairments

### A.     Plaintiff's Obesity

As explained above, the ALJ determined that Plaintiff's obesity is a severe impairment. [Doc. 10-2 at 15]. The ALJ stated that she "ha[d] considered the claimant's obesity in [the] RFC assessment," [*id.* at 17], but ultimately concluded that Plaintiff has the RFC to perform light work with certain limitations. [*Id.* at 19].

Plaintiff argues that the ALJ erred by failing to explain how she considered Plaintiff's obesity in determining his RFC. [Doc. 12 at 12]. According to M.D., the mere statement that the ALJ "considered" his obesity is insufficient, as Social Security Rulings required the ALJ to specifically consider the limiting effects of obesity and explain how the ALJ "reached [her]

conclusions on whether obesity causes any limitations." [*Id.* at 12 (quoting SSR 19-2p, ¶ 6)]. Plaintiff asserts that the ALJ's failure to do so amounts to reversible error. [*Id.*].

Social Security Ruling 19-2p recognizes that "[p]eople with obesity have a higher risk for other impairments, and the effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately." SSR 19-2p, 2019 WL 2374244, at *2 (May 20, 2019).[6] For this reason, the ALJ "must consider the limiting effects of obesity when assessing a person's RFC." *Id.* at *4. "As with any other impairment," the ALJ must explain "how [the ALJ] reached [her] conclusion on whether obesity causes any limitations." *Id.* The ALJ may not "make general assumptions about the severity or functional effects of obesity combined with other impairment(s)," as "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment." *Id.* Rather, the ALJ must evaluate "each case based on the information in the case record." *Id.*

However, the Tenth Circuit has

> determined that an ALJ's failure to explicitly discuss a claimant's obesity . . . during the formulation of the claimant's RFC is not grounds for remand when the claimant has "not discuss[ed] or cite[d] to any evidence showing that obesity further limited" the claimant's RFC more than the ALJ's final determination.

*Vigil v. Berryhill*, No. 18-cv-01251-MEH, 2019 WL 2098695, at *6 (D. Colo. May 14, 2019) (quoting *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011)). For example, in *Rose v. Colvin*, 634 F. App'x 632 (10th Cir. 2015), the claimant argued that the ALJ committed reversible error

---

[6] Plaintiff cites both SSR 02-1p and SSR 19-2p in his brief, but acknowledges that "[e]ffective May 20, 2019, the Commissioner replaced SSR 02-1p with SSR 19-2p." *See* [Doc. 12 at 12 n.2]. The court applies SSR 19-2p in its analysis here. *See* SSR 19-2p, 2019 WL 2374244, at *5 n.14 ("We will apply this SSR . . . to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

by failing to properly consider the effects of her obesity in formulating her RFC.  *Id.* at 637.  The

Tenth Circuit acknowledged the ALJ's obligation to consider obesity in formulating the RFC, but

emphasized that the claimant had "point[ed] to no medical evidence indicating that her obesity

resulted in functional limitations" and that the claimant's "hearing testimony did not describe [any]

limitations due to obesity."  *Id.*  For this reason, the Tenth Circuit concluded that the factual record

did not support the claimant's position that either alone or in combination with other impairments,

her obesity precluded her from working.  *Id.*

Here, Plaintiff does not direct the court to any record evidence demonstrating that, due to

his obesity, his functional limitations were more significant than the limitations found by the ALJ.

*See* [Doc. 12].  Even after Defendant pointed out that Plaintiff had failed to cite any evidence, *see*

[Doc. 16 at 7-8], Plaintiff does not direct the court to any record evidence supporting his argument

in his Reply.  *See* [Doc. 17].[7]  "This court is neither required nor inclined to scour the record in

search of evidence to support a party's arguments."  *Abdelmeged v. Colvin*, No. 14-cv-01643-REB,

2015 WL 5047645, at *6 (D. Colo. Aug. 26, 2015).  To be sure, the ALJ could have provided a

more thorough explanation as to how she considered M.D.'s obesity in assessing his RFC;

however, by failing to cite to any evidence supporting a conclusion that his obesity renders him

more limited than found by the ALJ, there is no reversible error here.  *See Vigil*, 2019 WL 2098695,

at *6 (finding no remand was warranted, even where the ALJ found that the claimant's obesity

---

[7] At best, Plaintiff asserts that "[t]he ALJ concluded that [M.D.] had 'ongoing left leg issues[,] including strength deficits and continued use of the cane,'" and that the restrictions, "when combined with additional limitations due to obesity and chronic pain syndrome, are reasonably likely to result in greater limitations than the ALJ found."  [Doc. 12 at 14].  But this argument essentially asks this court to reweigh the evidence before the ALJ, which the court cannot do. *Smith*, 821 F.3d at 1266.

was a severe impairment but failed to discuss it during the RFC determination, as the claimant had not shown that her obesity resulted in further limitations than those established in the RFC).

Other district courts have concluded similarly. *See, e.g.*, *Peggy S. C. v. Kijakazi*, No. 19-cv-00387-CVE-JFJ, 2021 WL 4148089, at *7 (N.D. Okla. Sept. 13, 2021) ("[E]ven though plaintiff contends that the ALJ should have discussed her obesity more thoroughly, she does not provide the Court with any evidence of additional functional limitations due to her obesity."); *Archie D. F. v. Saul*, No. 20-cv-52-CDL, 2021 WL 1348264, at *9 (N.D. Okla. Apr. 12, 2021) ("Plaintiff does not identify any evidence that his obesity causes further limitations that would preclude his performing light work with the limitations set out. . . . Accordingly, the court finds that any deficiency in the ALJ's consideration of obesity was harmless."). Because "recent case law mandates that a failure to properly consider obesity is not reversible error where, as here, the claimant points to no evidence that obesity imposes any additional limitations beyond those the ALJ found," *Anchondo v. Colvin*, No. CV 15-0893 KBM, 2017 WL 3610534, at *12 (D.N.M. Jan. 19, 2017), the court cannot conclude that remand is warranted on this basis.

### B.    Plaintiff's Sleep Apnea and Mental Impairments

In her decision, the ALJ stated that M.D.'s "sleep apnea and pain medications and associated possible drowsiness have been considered in limiting the claimant's exposure to hazards in the RFC." Doc. 10-2 at 21]. Plaintiff contends that the ALJ failed to adequately consider his sleep apnea and the associated possible drowsiness in determining his RFC because the restriction of exposure to hazardous conditions "says nothing about [M.D.'s] ability to perform the sustained requirements of a job on a regular and continuing basis, or . . . his ability to hold a job." [Doc. 12 at 14]. M.D. argues that the ALJ's consideration was "inadequate for the reasons explained in" SSR 03-2p, which provides:

> Chronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior, and may even reduce motor reaction times.  These factors can interfere with an individual's ability to sustain work activity over time, or preclude sustained work activity altogether. When evaluating duration and severity, as well as when evaluating RFC, the effects of chronic pain and the use of pain medications must be carefully considered.

SSR 03-2p, 2003 WL 22399117, at *5 (Oct. 20, 2003); *see also* [Doc. 12 at 14-15].

Plaintiff does not meaningfully develop this argument or explain the specific reason that he believes the ALJ's statement requires reversal, *see* [Doc. 12 at 14-15], which precludes the court's ability to assess this argument.  *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope of our review . . . is limited to the issues the claimant . . . adequately presents on appeal." (internal quotation marks omitted)).  At best, Plaintiff asserts generally that a conclusion that a person can engage in substantial gainful activity requires "'a determination that the claimant can hold whatever job he finds for a significant period of time.'"  [Doc. 12 at 15 (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994))].  While this is true, Plaintiff does not argue that he *cannot* sustain work regular activity over a period of time or direct the court to record evidence that he believes the ALJ failed to consider in her RFC determination.  *See generally* [Doc. 12 at 14-15].  For this reason, the court does not find a basis for remand here.

Similarly, Plaintiff argues that the ALJ erred by "simply equat[ing] the moderate [mental] limitations she found to work involving only simple instructions." [Doc. 12 at 15].  Plaintiff asserts that the limitation to simple work in his RFC "says nothing about [his] ability to perform the sustained requirements of a job on a regular and continuing basis, or on his ability to hold a job in light of his comorbid physical and mental impairments."  [*Id.*].  But again, Plaintiff directs the court to no evidence that he *cannot* perform the sustained requirements of a job on a regular and

continuing basis.  [*Id.* at 15-16].  It is not this court's duty to comb through the record to find support for Plaintiff's argument.  *Abdelmeged*, 2015 WL 5047645, at *6.

Insofar as Plaintiff's argument can be construed as an assertion that the ALJ failed to account for his moderate mental limitations into the RFC, the court respectfully disagrees.  Here, the ALJ determined that Plaintiff was moderately limited in his ability to understand, remember, and apply information and in the ability to maintain concentration, persistence, or pace.  [Doc. 10-2 at 17].  While Plaintiff cites case law explaining that mental limitations must be adequately accounted for in the RFC and that, generally, limitations to unskilled work in the RFC do not necessarily account for moderate mental limitations, Plaintiff does not identify which, if any, of his moderate mental limitations he believes is not adequately incorporated into his RFC.  *See* [Doc. 12 at 15-16].

The Tenth Circuit has held that "[a] limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments."  *Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012)  This is because a "claimant's functional ability is distinct from the skill level required to perform a particular job."  *Valdez v. Saul*, No. 17-cv-02610-PAB, 2020 WL 2832372, at *4 (D. Colo. June 1, 2020).  "Because [an individual's] response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job.  A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job."  SSR 85-15, 1985 WL 56857, at *6 (SSA 1985).

Contrary to Plaintiff's argument, however, the mental limitations incorporated into the ALJ's RFC assessment are not limited to simply "unskilled work"; rather, the ALJ incorporated the following mental limitations into Plaintiff's RFC:  "[Plaintiff] can understand, remember, and

carry out no more than simple instructions that can be learned in 30 days or less and can sustain concentration, persistence, and pace for those simple instructions for 2-hour intervals with normal breaks.  He can adapt to simple workplace instructions."  [Doc. 10-2 at 18].  Furthermore, the ALJ noted elsewhere in her decision that M.D. has "some memory deficits and difficulty performing more serial subtraction tasks and repeating information," and that "[t]hese issues would likely impact his ability to understand and remain focused on more complex tasks."  [*Id.* at 17].  The ALJ explained, however, that M.D.'s mental status findings showed "intact concentration," and the ALJ ultimately concluded that M.D. "could perform simple work activities and make simple work-related decisions."  [*Id.*].

Stated another way, the ALJ did not simply limit Plaintiff to unskilled work; rather, she expressed his moderate impairments in mental functioning "in terms of work-related functions" or "work-related activities," as required by the Regulations.  *Warren v. Colvin*, 170 F. Supp. 3d 1360, 1364-65 (D. Colo. 2016); *see also Almanza v. Kijakazi*, No. 1:20-cv-01258-LF, 2022 WL 2704271, at *8 (D.N.M. July 12, 2022) (finding that the ALJ properly incorporated moderate mental limitations where the ALJ "did not use the shorthand phrases 'simple work' or 'unskilled tasks'" but instead "properly defined [the claimant's] ability to perform basic work activities"); *C.J. v. Commissioner*, No. 20-cv-02972-KLM, 2022 WL 910707, at *6 (D. Colo. Mar. 28, 2022) ("[T]he ALJ did not simply limit Plaintiff to unskilled work; rather, the ALJ discussed specific parameters underlying the limitations at issue.  No more was required.").

Moreover, the Tenth Circuit has held that a limitation to unskilled work may sufficiently account for moderate mental limitations where the ALJ, at step four, identified evidence and explained the basis for the limitation to unskilled work.  *See Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015).  In *Vigil*, the ALJ concluded that the claimant, who was moderately limited in the

ability to maintain concentration, persistence, and pace, had the RFC to perform jobs with a specific vocational preparation[8] of one or two—i.e., unskilled work. *Id.* at 1201. While the Tenth Circuit acknowledged that "a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment," *id.* at 1203, the court noted that the ALJ expressly found that the claimant had a "normal ability to recall items on immediate recall, and an ability to spell words forward, as well as finding of normal thought processes, indicated that [the claimant] retained enough memory and concentration to perform at least simple tasks." *Id.* at 1203-04 (alterations changed). For this reason, the court concluded that a limitation to unskilled work adequately accounted for the claimant's mental limitations. *Id.* at 1204. Similar here, the ALJ concluded that M.D.'s moderate mental limitations stem from "memory deficits and difficulty performing more serial subtraction tasks and repeating information," but also noted that M.D.'s "mental status findings [were] most often mild and show[ed] intact concentration." [Doc. 10-2 at 17]. In light of *Vigil*, and because Plaintiff does not identify any specific mental limitations that he believes were not adequately accounted for in the RFC, this court concludes that the RFC limiting Plaintiff to "simple instructions that can be learned in 30 days or less," sustaining concentration for those simple instructions "for 2-hour intervals with normal breaks," and "simple workplace changes," [*id.* at 18], adequately accounts for those limitations.

---

[8] Specific vocational preparation "refers to the time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Vigil*, 805 F.3d at 1201 (quotation omitted).

## II.     Plaintiff's Subjective Complaints

M.D. next contends that the ALJ "failed to show proper evaluation of [his] subjective complaints under the analysis described in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)."  [Doc. 12 at 17].  In *Luna*, the Tenth Circuit determined that

> an ALJ faced with a claim of disabling pain is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163-64).  The ALJ should consider the following evidence in determining whether a claimant's pain is disabling:  a claimant's persistent attempts to find relief for the pain, her regular use of crutches or a cane, regular contact with a doctor, the claimant's daily activities, and the claimant's dosage, effectiveness, and side effects of medication taken by the claimant. *Id.* at 1167 (citing *Luna*, 834 F.3d at 165-66).  "But so long as the ALJ 'sets forth the specific evidence [she] relies on in evaluating the claimant's credibility,' [she] need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Id.* (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

Plaintiff does not clearly explain how the ALJ failed to comply with the Tenth Circuit's directive in *Luna*. *See* [Doc. 12 at 17-18].  The court has reviewed the ALJ's decision and does not find that the ALJ diverged from the three-step process required by *Luna*.  First, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," but that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence."  [Doc. 10-2 at 19].  The ALJ then discussed both objective medical evidence, as well as Plaintiff's subjective statements about his symptoms, in extensive detail. [*Id.* at 19-23].  Finally,

the ALJ concluded that M.D.'s limitations were "not fully disabling" and that Plaintiff retained the RFC to perform work activities. [*Id.* at 23]. Absent any argument from Plaintiff explaining how the ALJ failed to comply with *Luna*, the court finds no error here. *See Speaker v. Commissioner*, No. 19-cv-01504-RM, 2020 WL 1138508, at *2 n.1 (D. Colo. Mar. 9, 2020) ("Although Plaintiff's opening brief argues at page 4 that the ALJ failed to properly evaluate her subjective complaints under the analysis described in [*Luna*], no further mention of *Luna* can be found. . . . To the extent Plaintiff has not waived any argument . . . by failing to present it adequately in her opening brief, the Court finds she has not shown the ALJ applied incorrect legal standards in evaluating her subjective complaints of pain."). The court now turns to Plaintiff's alternative arguments with respect to his subjective complaints of symptoms.

***Complaints of Pain***. Plaintiff first challenges the ALJ's conclusion that M.D.'s subjective statements about his symptoms were not entirely consistent with the record, asserting that "even the ALJ's own evidence summary reflects the consistency between [M.D.'s] statements and the medical findings" in the record. [Doc. 12 at 17]. Specifically, he states that "[t]he fact that [M.D.'s] medical sources prescribed strong medications for his pain corroborated his testimony that his pain is 'intense and persistent.'" [*Id.*].

The court finds no error here. In her decision, the ALJ acknowledged that M.D. "described back and left leg pain[] and rated his daily pain level at a 9" and that M.D. represented that he had difficulty walking and used a cane. [Doc. 10-2 at 19]. The ALJ further acknowledged that Plaintiff received treatment for ongoing left leg pain in mid-2019, but that his back pain was "well-controlled and [had] significantly improved" after spinal surgery and continued to show improvement as compared to his condition before surgery. [*Id.* at 21]. The ALJ also acknowledged Plaintiff's "ongoing left leg issues (including strength deficits and continued use of

the cane)," [*id.* at 22], but noted that records from 2020 showed "some continued improvement in [Plaintiff's] left foot symptoms after the spinal cord stimulator placement" and indicated that Plaintiff "was doing some increased walking." [*Id.* at 21]. The ALJ ultimately concluded that the record demonstrated that Plaintiff responded positively to his back treatments, "consistent with the conclusion that light exertional level lifting and carrying is reasonable, and that the claimant could perform most postural activities frequently." [*Id.* at 22]. In other words, the ALJ cited to record evidence supporting her conclusion that his subjective statements of symptoms were not entirely consistent with the record. [*Id.* at 19-22].

Although Plaintiff points to evidence that he argues demonstrates "intense and persistent" pain, [Doc. 12 at 17], as explained above, this court cannot reweigh the evidence that was before the ALJ; rather, the court's inquiry is limited to whether the ALJ's decision is supported by substantial evidence. *Smith*, 821 F.3d at 1266. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). This court cannot "displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.*

***Plaintiff's Daily Activities***. Additionally, Plaintiff contends that "[i]n discussing [M.D.'s] statements about his limited daily activities, the ALJ did not point to any inconsistencies between what [M.D.] claimed and the record showed." [Doc. 12 at 17-18]. However, "such a 'formalistic factor-by-factor recitation of the evidence' is not required." *Wilson v. Saul*, No. 19-cv-03485-MEH, 2021 WL 457991, at *12 (D. Colo. Feb. 9, 2021) (quoting *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009)); *cf. Garcia v. Commissioner*, 817 F. App'x 640, 647 (10th Cir. 2020) (rejecting argument that the ALJ must articulate "what activities of daily living were inconsistent

with" a medical source opinion, as the court "ha[d] not previously required ALJs to finely parse a claimant's reported activities in this fashion"). "The ALJ has not erred so long as she 'sets forth the specific evidence [s]he relies on in evaluating the claimant's credibility." *Wilson*, 2021 WL 457991, at *12 (quoting *Qualls*, 206 F.3d at 1372). Here, the ALJ summarized Plaintiff's subjective testimony about his symptoms, limitations, and daily activities, such as performing a limited range of household chores for brief periods of time and performing pool exercises twice per week. [Doc. 10-2 at 19]. The ALJ then spent many pages describing the evidence in the record before concluding that Plaintiff's subjective statements, were not entirely consistent with the record evidence as a whole, including his daily activities. [*Id.* at 19-23]. This is sufficient to meet the ALJ's burden. *Wilson*, 2021 WL 457991, at *12.

   ***Medication Side Effects***. Next, Plaintiff notes that "[t]he ALJ noted that [M.D.] had 'remained on narcotic pain medications . . . with no significant side effects noted in treatment records.'" [Doc. 12 at 17-18 (quoting [Doc. 10-2 at 21])]. He argues that this was error because "[f]or purposes of determining disability, it is not necessary—nor even expected—that a claimant report 'side effects' per se to his physician when the side effects are those expected from the medications prescribed.'" [*Id.* (quoting *Kirby v. Astrue*, 568 F. Supp. 2d 1225, 1232-33 (D. Colo. 2008))]. Plaintiff does not explain how this amounts to reversible error, *see* [*id.*], but in any event, the court finds that *Kirby* does not warrant remand here. In *Kirby*, the court concluded that the ALJ failed to properly consider the side effects of Plaintiff's medications in considering the credibility of the plaintiff's testimony. *Kirby*, 568 F. Supp. 2d at 1232. In that case, the ALJ had stated in his decision that "[w]hile the claimant report[ed] the existence of severe side effects, he failed to identify any such side effects to his physicians during his examinations." *Id.* The court noted, however, that "[c]ontrary to the ALJ's assertion, the record [was] replete with discussion of

. . . side effects," referencing numerous portions of the administrative record setting out the claimant's side effects. *Id.* at 1233. The court concluded that the ALJ had failed to properly consider the side effects of the claimant's medications because "[r]ather than consider the alleged effects of [the claimant's] medications, the ALJ simply dismissed [his] complaints as lacking credibility." *Id.*

Here, the ALJ stated that Plaintiff "remained on narcotic pain medications throughout the alleged disability (though after lower doses after his back surgery), <u>with no significant side effects noted in treatment records</u>." [Doc. 10-2 at 21 (emphasis added)]. In other words, unlike *Kirby*, the ALJ represents here that she reviewed the medical record to determine whether it demonstrated that Plaintiff was experiencing any side effects, consistent with the ALJ's obligation to consider, *inter alia*, medication side effects in determining Plaintiff's credibility. *Keyes-Zachary*, 695 F.3d at 1167. Indeed, had the ALJ not discussed whether the record showed evidence of medication side effects, Plaintiff arguably could have asserted error on this point. Moreover, Plaintiff does not direct the court to any record evidence demonstrating side effects that he suggests the ALJ improperly disregarded or failed to consider. *See* [Doc. 12]. The court finds no error here.

***Impairments Causing Plaintiff to be Off-Task***. Finally, M.D. maintains that the ALJ failed to address "the extent to which [M.D.'s] combined impairments would cause [M.D.] to be off-task during the workday." [*Id.* at 18]. He asserts that his moderate limitations in understanding, remembering, and applying information and concentrating, persisting, and maintaining pace, "when combined with his pain and other symptoms[,] would likely result in his being off-task more than 10 percent of the [workday]," rendering him unable to perform unskilled jobs. [*Id.*]. Because Plaintiff does not expressly explain why he believes the ALJ failed to consider his impairments in combination beyond suggesting that the ALJ should have reached a different

result, the court respectfully concludes that this argument requests that the court substitute its judgment for that of the ALJ or reweigh the record evidence, which the court cannot do. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008); *Smith*, 821 F.3d at 1266. As such, this argument does not warrant reversal.

## III.   Failure to Address or Reconcile Conflicts in the Record

Next, Plaintiff contends that the ALJ's RFC assessment conflicts with the hearing testimony of the vocational expert ("VE") and that the ALJ failed to reconcile this conflict. [Doc. 12 at 18]. Plaintiff identifies two specific errors in the ALJ's decision: first, Plaintiff contends that the ALJ's limitation in his RFC to carrying out "simple instructions" limits him to jobs requiring only level-one reasoning, but all of the potential jobs identified by the VE at the hearing—and relied upon by the ALJ in her decision—require a reasoning level of two or three. [*Id.* at 18-19]. Second, Plaintiff asserts that the job of toll collector is incompatible with the ALJ's findings; according to Plaintiff, a toll collector position requires level-two math, which Plaintiff asserts is "inconsistent with the ALJ's finding that [M.D.] was limited to simple instructions." [*Id.* at 19]. Moreover, Plaintiff asserts that a toll collector position "exceeds the physical limitations the ALJ found [M.D.] to have." [*Id.* at 20]. Plaintiff contends that the ALJ failed to address or resolve the conflicts between the VE testimony and the job descriptions in the Directory of Occupational Titles ("DOT"), which warrants remand. [*Id.* at 20-21].

In response, the Commissioner argues that Plaintiff's argument "must fail because the ALJ asked the vocational expert . . . if there were any inconsistencies between his testimony and the DOT, and the vocational expert testified there were none," and "[t]his inquiry is all that was required" of the ALJ. [Doc. 16 at 12]. According to the Commissioner, this court cannot "evaluate in the first instance whether a claimant is able to perform specific jobs." [*Id.* (quoting *Thompson*

*v. Colvin*, 551 F. App'x 944, 949 (10th Cir. 2014)].  In addition, the Commissioner argues that (1) reasoning levels measure educational attainment, not job complexity, and thus, there is no inconsistency between Plaintiff's RFC and the potential jobs identified, [*id.* at 12-13]; (2) the RFC limitation to simple instructions is consistent with level-two reasoning, [*id.* at 13-15]; and (3) Plaintiff is capable of working as a toll collector.  [*Id.* at 15-16].  Because the ALJ's determination of available jobs was performed at step five, it was the ALJ's burden at the administrative level to demonstrate that there are a significant number of jobs in the national economy which Plaintiff is able to perform.  *Neilson*, 992 F.2d at 1120.

   ***The Reasoning Levels***.  The DOT sets forth a Scale of General Education Development ("GED") for various requirements to maintain satisfactory job performance, including reasoning. *See Dictionary of Occupational Titles*, App'x C (4th ed. 1991).  Specifically, the DOT describes the following reasoning levels which are relevant here:

> LEVEL 3:  Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations.
>
> LEVEL 2:  Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.
>
> LEVEL 1:  Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*Id.*  At the hearing, the VE identified the following potential jobs for a person with Plaintiff's abilities:  a small products assembler, an electronics worker, and a toll collector.  [Doc. 10-2 at 62-63].  The ALJ referenced each of these jobs, as well as the number of associated positions in the United States, at step five.  [*Id.* at 24].  The ALJ concluded that "[b]ased on the testimony of the [VE], . . . considering the claimant's age, education, work experience, and [RFC], the claimant is

capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [*Id.*].

As explained above, Plaintiff argues that the jobs identified by the VE are incompatible with his RFC limitation to "simple instructions" because the identified jobs require level-two or level-three reasoning. [Doc. 12 at 19]. In response, the Commissioner argues that there was no conflict between the VE testimony and Plaintiff's RFC because the GED measures "educational attainment" rather than job complexity. [Doc. 16 at 12-13]. The court is respectfully unpersuaded by this argument, which has been consistently rejected by District courts in this Circuit.

For purposes of background, this court reviews the Tenth Circuit's published 2005 opinion in *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005). In *Hackett*, the claimant argued on appeal that the ALJ failed to reconcile a conflict between the VE's testimony and the DOT. *Hackett*, 395 F.3d at 1174-75. More specifically, the claimant asserted that her RFC was incompatible with jobs that required level-three reasoning—the level of reasoning required for both jobs identified for the claimant. *Id.* at 1175-76. The Tenth Circuit agreed with the claimant that her functional limitations "seem[ed] inconsistent with the demands of level-three reasoning." *Id.* at 1176. Accordingly, the court reversed and remanded this portion of the ALJ's decision, with instructions for the ALJ to address the conflict between the claimant's "inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE." *Id.*

Thereafter, in an unpublished 2013 opinion, the Tenth Circuit stated that the GED "does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development."

*Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013); *see also Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012) ("[A] claimant's GED . . . is the level of formal and informal education required to perform a specific job."). The Commissioner relies upon both *Anderson* and *Mounts* in arguing that because the GED reasoning levels measure educational requirements, not job complexity, there was no evidence in the record that Plaintiff's RFC was incompatible with the jobs identified by the VE. [Doc. 16 at 13].

A number of district courts have considered and rejected the Commissioner's current argument on various grounds. For example, some courts have noted that published, rather than unpublished, decisions must guide the lower court's analysis. *See Paddelty v. Colvin*, No. CIV-14-891-D, 2016 WL 3647697, at *3 (W.D. Okla. July 1, 2016) ("[T]he Court . . . is bound to follow the clear dictates of the circuit's published decision in *Hackett*. Therefore, the Court declines to follow *Anderson* and looks to the circuit's opinion in *Hackett* for guidance."); *Lucero v. Saul*, No. CV 19-0114 JHR, 2020 WL 1495285, at *6 (D.N.M. Mar. 27, 2020) ("*Hackett* is controlling, notwithstanding *Anderson*'s observations about SVP and GED."). Alternatively, some courts have concluded that the cases do not conflict and can instead be reconciled. *See Romero v. Saul*, No. CV 19-0092 JHR, 2020 WL 1677074, at *6 (D.N.M. Apr. 6, 2020) ("The Court does not view [*Anderson*] as contradicting *Hackett* whatsoever, as the GED level required by a job could easily be inconsistent with a claimant's residual ability or educational/vocational profile. Moreover, the Court fails to see how *Mounts* contradicts *Hackett*, as, there, the claimant could not dispute that she 'retained the GED to perform the jobs as an appointment clerk, escort vehicle driver, or dispatcher, as testified to by the VE.'"); *Akbichi v. Berryhill*, No. 17-cv-00838-REB, 2018 WL 1737206, at *4 (D. Colo. Apr. 11, 2018) ("The Deputy Commissioner's contention that *Anderson* and *Hackett* represent a split in authority in the Tenth Circuit on this issue is unpersuasive. It is

plain that the difficulty identified in *Hackett* and its progeny stems from the unexplained equivalence between a claimant's limited mental residual functional capacity and alternative jobs which ostensibly require more complex reasoning.").

Even assuming that *Anderson* and *Mounts* are inconsistent with *Hackett*, the court is bound to follow the Tenth Circuit's published decision in *Hackett*. *Christina Michelle B. v. Saul*, No. 18-cv-482-JFJ, 2019 WL 5589081, at *3 (N.D. Okla. Oct. 30, 2019).  In other words, the court concludes that the reasoning levels in the GED are relevant in constructing a claimant's RFC, and if a conflict arises between the DOT and the VE testimony, the ALJ must resolve that conflict before relying on the VE's testimony.  *Hackett*, 395 F.3d at 1176.

***Simple Instructions and Reasoning***.  In the alternative, the Commissioner contends that there was no conflict for the ALJ to resolve because the RFC limitation to "simple instructions" is consistent with reasoning level two, asserting that "district courts in this Circuit have repeatedly found that similar mental RFC limitations were consistent with GED reasoning level two." [Doc. 16 at 13-14 (citing cases)].  Plaintiff disagrees.  He counters that "there are as many cases that conflict with Defendant's position as there are cases that Defendant relies upon in support." [Doc. 17 at 3 (citing cases)].  Plaintiff maintains that a limitation to "simple" instructions "equates to level[-one] reasoning." [Doc. 12 at 19].

The court has reviewed the state of the case law in this Circuit and is persuaded by a number of decisions issued in this District.  Most recently, a court in this District considered whether a limitation to "simple instructions" was consistent with level-one or level-two reasoning, thoroughly analyzing applicable case law and the plain language of the DOT.  *C.H.C. v. Commissioner*, No. 20-cv-02428-KLM, 2022 WL 950433, at *6-8 (D. Colo. Mar. 29, 2022).  The *C.H.C.* court first addressed the lack of directly on-point authority addressing this issue, noting

that the cases upon which the Commissioner relied had equated simple *work tasks*—not simple *instructions*—to level-two reasoning, and that the court had "found no legal authority equating the two for purposes of legal analyses." *Id.* at *7-8. Likewise, many of the cases cited by the Commissioner here address an RFC with a limitation to simple *tasks*, rather than simple *instructions*. *See, e.g.*, *Karen Jean M. v. Saul*, No. CV 19-2455-JWL, 2020 WL 5057488, at *8 (D. Kan. Aug. 27, 2020) (claimant was limited to simple tasks but could "carry out <u>detailed</u> but uninvolved instructions") (emphasis added); *Dean v. Saul*, No. CIV-18-368-SPS, 2020 WL 5235339, at *4 (E.D. Okla. Sept. 2, 2020); *Nelson v. Commissioner,* No. CIV-17-360-SPS, 2019 WL 1293309, at *2 (E.D. Okla. Mar. 21, 2019).

In addition, the *C.H.C.* court noted that the language of the level-one reasoning guideline "explicitly discusses simple instructions by stating that a claimant must be able 'to carry out simple one-or two-step instructions,'" but that the level-two reasoning guideline does not "mention simple instructions but, rather, states that a claimant must be able 'to carry out detailed but uninvolved written or oral instructions.'" *C.H.C.*, 2022 WL 950433, at *8. "Thus, the plain language of these reasoning levels suggests that jobs with level 2 reasoning skills require one to comply with 'detailed instructions' rather than mere 'simple instructions.'" *Id.* The *C.H.C.* court expressly declined to find that a limitation to "simple instructions" necessarily *precludes* jobs with level-two reasoning skills, but held that under *Hackett*, the ALJ was required to explain the inconsistency between the claimant's RFC and the ALJ's conclusion that the claimant could perform jobs with level-two reasoning—notably, the same jobs identified for Plaintiff here: toll collector, small products assembler, and electronics worker. *Id.* at *6, *8. Because the ALJ failed to do so, the court reversed and remanded for further findings. *Id.* at *9.

Another court in this District made the same distinction between level-one and level-two reasoning in *Deveraeaux v. Astrue*, No. 12-cv-01168-WJM, 2013 WL 2393075 (D. Colo. May 31, 2013).  Specifically, the court emphasized that "[o]ne of the fundamental differences between the levels is that reasoning level 1 involves the ability to understand **'simple' instructions**; whereas reasoning level 2 involves the ability to understand **'detailed' instructions**." *Id.* at *8 (emphasis in original).  And because the ALJ failed to address the inconsistency in her decision, the court remanded the case for rehearing so the inconsistency could be reconciled. *Id.* at *9; *see also Long v. Kijakazi*, No. CIV-20-658-SM, 2021 WL 3826478, at *3 (W.D. Okla. Aug. 26, 2021) (identifying "an apparent conflict between a limitation to 'could understand, remember, carry out simple instructions, and make simple work-related decisions' (as found in Plaintiff's RFC) and a need to carry out 'detailed but uninvolved . . . instructions' (as found in jobs requiring Level 2 reasoning)" and remanding for resolution of that conflict).

The court is persuaded by these cases and agrees with Plaintiff that based on the plain language of the GED reasoning levels, a limitation to "simple" instructions is more in line with jobs requiring level-one reasoning, rather than level-two.  *See DOT*, App'x C.  But as explained by Plaintiff, all of the jobs identified by the VE require a reasoning level of two or three.  *See DOT* § 726.687-101 (electronics worker requiring reasoning level two); *DOT* § 211.462-038 (toll collector requiring reasoning level three); *DOT* § 706.684-022 (small products assembler requiring reasoning level two).  Like the court in *C.H.C.*, this court declines to find that a limitation to simple instructions is always incompatible with all jobs requiring level-two reasoning; however, under *Hackett*, the ALJ was required to address the conflict in the evidence.[9]  Because she did not do so,

---

[9] Although the Commissioner argues that the ALJ satisfied her burden by asking the VE at the hearing whether there was a conflict between his testimony and the DOT, [Doc. 16 at 11-12], the court respectfully disagrees.  In support of her argument, the Commissioner relies upon SSR 00-4p,

remand, with instructions for the ALJ to explain the apparent discrepancy, is appropriate.  *C.H.C.*, 2022 WL 950433, at *8; *Keyes-Zachary*, 695 F.3d at 1166 (the court cannot insist on "technical perfection" in an ALJ's decision, but the court must nevertheless be able to "follow the adjudicator's reasoning in conducting [its] review").

The court declines to pass on the remaining arguments raised in M.D.'s briefing, as "they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  However, on remand, the administrative law judge is directed to consider the remaining issues raised in M.D.'s briefing—in particular, M.D.'s argument concerning the number of jobs in the national economy—and to modify her decision if appropriate. *See Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) ("[T]he issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and . . . should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.") (quotation omitted).

---

which clarifies the standards for identifying and resolving conflicts between occupational evidence provided by a VE and the information in the DOT.  *See* SSR 00-4p, 2000 WL 1898704, at *2 (SSA Dec. 4, 2000).  While the Ruling sets forth the responsibility of the ALJ to ask the VE about conflicts, *see id.* at *4, it does not state that the ALJ's duty ends there.  Rather, it provides that "[w]hen there is an apparent unresolved conflict between [VE] evidence and the DOT, the adjudicator <u>must elicit a reasonable explanation for the conflict before relying on the [VE] evidence</u> to support a determination or decision about whether the claimant is disabled."  *Id.* at *2 (emphasis added).  Accepting the Commissioner's argument would permit ALJs to disregard blatant conflicts in the evidence so long as the VE fails to identify those conflicts, which cannot be the correct result.

## CONCLUSION

For the reasons stated herein, the court hereby **REVERSES** the Commissioner's final decision and **REMANDS** this matter for further proceedings consistent with this Memorandum Opinion and Order.

DATED:  August 10, 2022                    BY THE COURT:

                                           _____
                                           Nina Y. Wang
                                           United States District Judge